IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Case No. 1:23-cr-00342-MLG

MARCOS CORDOVA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO COMPEL

On June 28, 2022, Drug Enforcement Agency ("DEA") agents arrested an individual[1] on federal drug charges, and that person identified Defendant Marcos Cordova as their supplier. Doc. 31-1 at 14. Additional investigation into Cordova ensued, including GPS tracking of his car and cell phone. DEA agents ultimately directed a confidential source to call Cordova to set up a purchase of fentanyl pills and methamphetamine on December 22, 2022. *Id.* at 21; *see also id.* at 13-21 (discussing other information known to agents). That afternoon, when Cordova told the confidential source he was on his way to execute the transaction, agents intercepted Cordova's car and detained him. *Id.* at 22. A search of the vehicle did not reveal any drugs, but a drug-sniffing dog alerted to the presence of contraband. *Id.* at 22-23. Because agents had previously received information suggesting that Cordova's automobile contained a false compartment where drugs might be stored, his car was transported to the DEA's Albuquerque District Office while agents sought a search warrant. *Id.* at 22.

Magistrate Judge Kirtan Khalsa granted the agents' request later that same day. *Id.* at 1. The warrant permitted officers to search "the entire vehicle, all storage areas/containers (including

---

[1] This person's identity is confidential and redacted from the search warrant affidavit, Doc. 31-1.

1

all storage compartments and containers) in the [vehicle], and all areas in which the items to be seized could be concealed." *Id.* at 4. The resulting search of the car revealed $13,000 in U.S. currency, methamphetamine, fentanyl, suspected heroin, a scale, and two cell phones. *Id.* at 2; Doc. 31 at 1; Doc. 32 at 3. These items were found in a "large speaker box in the trunk." Doc. 32 at 3; *see* Doc. 31 at 1 (referring to items found in a "hidden compartment in the Camaro").

Cordova concedes that the agents had probable cause to search the Camaro incident to his detention and to conduct a dog sniff. *Id.* at 3. However, because the continued seizure and subsequent search at the DEA office were (apparently) based on the reports that officer received regarding the hidden compartment, Cordova asserts he is entitled to production to these reports to determine the veracity of statements contained therein. In his view, "[w]ithout further information on the debriefing reports and the veracity of the alleged cooperators or informants, it does not appear that agents had probable cause to seize and transport the vehicle to the DEA office, to search the vehicle for hidden compartments, and await the search warrant." *Id.* at 3-4.

Cordova admits that an officer who has probable cause to search a vehicle may do so later at the police station provided the temporal scope is reasonable, *id.* at 6, and this concession comports with binding case law. The Supreme Court has made plain "that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant.'" *Texas v. White*, 423 U.S. 67, 68 (1975) (quoting *Chambers v. Maroney*, 399 U.S. 42, 51 (1970)).

Further, "if there is probable cause to believe that a container in a lawfully stopped vehicle contains contraband, the police may search the container without a warrant." *United States v. Oliver*, 363 F.3d 1061, 1068 (10th Cir. 2004) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the

search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). The search of a container need not be contemporaneous with the seizure of a vehicle; the container may be searched within a reasonable time afterward. *Oliver*, 363 F.3d at 1068. And so, because the agents had probable cause to believe Cordova's vehicle contained drugs which might be stored in containers, the agents were permitted to perform a warrantless search of any containers in the vehicle.

However, rather than performing a warrantless container search, law enforcement took a more prudent approach and obtained a search warrant for Cordova's vehicle and any containers therein. It is this additional step that gives rise to the present controversy.

Cordova argues the warrant may be predicated on false or misleading information. But he tenders no evidence to support this claim. At this point, Cordova's questions regarding the veracity of the information supporting the warrant are pure speculation. His unsubstantiated assertions do not undermine the validity of the warrant, nor do such claims entitle him to discovery. He must make a threshold showing of falsehood before the factual predicate of the agents' affidavit may be challenged. *See United States v. Smith*, Criminal No. 16-464, 2017 WL 3172790, at *4 (D.N.M. May 16, 2017) ("A defendant must *first* make a showing of a deliberate falsehood before being able to challenge an affidavit. Here, Defendant expects that the Government should be required to turn over all requested discovery to him—whether or not that material should be disclosed under the federal rules—hoping to find something in the materials that might help raise a *Franks* issue."). This he has not done. Cordova has not proffered a factual basis demonstrating an entitlement to the information he seeks, nor has he raised sufficient doubt for the Court to review the statements in camera. As it stands, Cordova's constitutes little more than a prohibited fishing expedition, and one that this Court will not countenance.

## CONCLUSION

For the above reasons, the Court denies Cordova's motion. Doc. 31. It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA